IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

FRANK THON,

                          Plaintiff, :

                                     :        C O M P L A I N T

                  v.                 :

                                     :   Civil Action No. 9:13-cv-898

C. GRIMSHAW, Sergeant at Clinton     :
Correctional Facility;
                                     :   JURY TRIAL DEMANDED
TOD POPOUR, Correctional Officer at
Clinton Correctional Facility;       :

BETSY WHELDON, Correctional Officer  :
at Clinton Correctional Facility;
                                     :
JASON LUCIA, Correctional Officer at
Clinton Correctional Facility;       :

JOHN ROCK, Correctional Officer at   :
Clinton Correctional Facility;
                                     :
KANG LEE, Doctor/Medical Health Care :
Provider at Clinton Correctional
Facility;                            :

VONDA JOHNSON, Head Medical          :
Administrator at Clinton Correctional
                                     :
CARL KOENIGSMANN, Associate
Commissioner/Chief Medical Officer;  :

NURSE KHAN, Nurse at Clinton         :
Correctional Facility;
                                     :
THOMAS LaVALLEY, Superintendent at
Clinton Correctional Facility,       :

Individually And In Their Official   :
Capacities,
                          Defendant's.:



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 3 1 2013
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

## I. COMPLAINT

Plaintiff, Frank Thon, **PRO SE,** for his complaint states as follows:

## II. JURISDICTION AND VENUE

1. This action arises under and is brought pursuant to 42 U.S.C. §1983 to remedy the deprivation, under color of law, of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(1),(2),(3) and (4).

2. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events given rise to this cause of action occurred at Clinton Correctional Facility, Dannemora, New York, Clinton County, which is located within the Northern District of the State of New York.

## III. PARTIES

3. Plaintiff Frank Thon is and was, at all times relevant hereto, a prisoner in the custody of the New York Department of Corrections and Community Supervision (hereinafter NYSDOCCS) and is currently incarcerated at the Clinton Correctional Facility, Dannemora, New York, Clinton County (hereinafter "Clinton").

4. Defendant Sergeant C. Grimshaw was, at all times relevant hereto, a Sergeant of the correctional officers at Clinton, who at all times of the events described below was serving as an active sergeant.

5. Defendant Tod Popour was, at all times relevant hereto, a correctional officer at Clinton.

6. Defendant Betsy Wheldon was, at all times relevant hereto, a correctional officer at Clinton.

7. Defendant Jason Lucia was, at all times relevant hereto, a correctional officer at Clinton.

8. Defendant John Rock was, at all times relevant hereto, a correctional officer at Clinton.

9. Defendant Kang Lee was, at all times relevant hereto, a physician employed or retained by the NYSDOCCS to provide medical services at Clinton.

10. Defendant Vonda Johnson was, at all times relevant hereto, the head medical administrator employed or retained by the NYSDOCCS to provide the supervision of the day-to-day operations of the medical department at Clinton.

11. Defendant Carl Koeningsmann was, at all times relevant

hereto, the associate commissioner and chief medical officer employed or retained by the NYSDOCCS to be in charge of the day-to-day operations of all the regional medical departments in the State of New York for the NYSDOCCS.

12. Defendant Nurse Khan was, at all times relevant hereto, a nurse employed or retained by the NYSDOCCS working at Clinton.

13. Defendant Thomas LaValley was, at all times relevant hereto, the superintendent of Clinton Correctional Facility employed by the NYSDOCCS to run the day-to-day operations of Clinton Correctional Facility.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. For the Claim(s) against Defendants Grimshaw, Popour, Wheldon, Lucia and Rock, the facility grievance procedure was not "functionally available" to this Plaintiff due to the threat(s), intimidation and fear of "more" retaliation by said individuals and their peers and, the only available remedy was/is to file a Claim in the Federal District Court.

15. As for Defendants Khan, Lee, Johnson, Koeningsmann and LaValley, this Plaintiff has filed numerous facility grievances which were all denied in relevant parts, appealed to the superintendent which were all denied in relevant parts and then, appealed to the Central Office Review Committee (CORC) which were

- 4 -

all denied in relevant parts.

## V. STATEMENT OF CLAIM

**16.** At all relevant times herein, Defendants were "persons" for the purpose of 42 U.S.C. Section 1983 and acted under color of law to deprive Plaintiff of his constitutional rights, as set forth more fully below.

## VI. STATEMENT OF FACTS

**17.** On July 31, 2010, Frank Thon (hereinafter "Plaintiff"), was assigned to and resided in a single inmate "keep-lock" Cell, One Company, D Block, Cell #12, in Clinton Correctional Facility (hereinafter "Clinton").

**18.** Several days prior to July 31, 2010, Plaintiff was found guilty of allegedly making a verbal threat on a staff member, Correctional Officer Jason Lucia, hence the keep-lock detention.

**19.** On July 31, 2010, at approximately 8:30pm., Plaintiff was laying in his bunk, in his underwear, socks and T-shirt when, he was surprised by the sudden appearance of Sergeant Grimshaw (hereinafter "Grimshaw") and Correctional Officer Tod Popour (hereinafter "Popour"), who stopped in front of his Cell, then was instructed by Grimshaw to get up from his bunk, turn towards the back wall of the Cell, walk backwards to the front of the Cell,

and to put his hands together behind his back. Plaintiff asked Grimshaw if he should put his pants on, Grimshaw replied no but, put your shower shoes (flip-flops) and back-up to the gate. The Cell gate opened and Grimshaw further instructed Plaintiff to take a few steps backwards, Popour took a hold of Plaintiff's two thumbs, then Grimshaw instructed Plaintiff to start walk towards the front of One Company.

20. On July 31, 2010, as Plaintiff was being lead to the front of One Company, as he stepped through the gateway, he noticed Correctional Officer Betsy Wheldon (hereinafter "Wheldon"), (posted-up) standing [midway] on the staircase and scanning the upper gallery and then back down to where the Plaintiff was, several consecutive times.

21. On July 31, 2010, subsequent to Plaintiff noticing Wheldon posted-up on the staircase performing a "look-out" tactic, Plaintiff was once again startled when, off to his right, across the room, Correctional Officer Joseph Rock (hereinafter "Rock") and Correctional Officer [John Doe] (hereinafter "Doe"), were standing shoulder to shoulder and pulling on their blue leather "beat-down" gloves when, all of the sudden, Correctional Officer Jason Lucia (hereinafter "Lucia") walked out from between them and said: "remember me mother fucker?", while pulling on [h]is blue leather "beat-down" gloves.

22. As Lucia took a few steps forwards towards the Plaintiff,

Plaintiff turned to run but, Popour shoved him from behind towards Lucia, and he stumbled to the ground, falling out of his shower shoes. Plaintiff, already suffering from a very well documented spinal injury, struggled to his feet, only to be struck in the lower back by Doe with his batton which, dropped the Plaintiff back to the ground.

23. Upon being dropped to the ground for the second time, Plaintiff turned to his right side and was thereafter immediately mounted by Lucia who, straddled him over his left hip area where, he began to punch Plaintiff in his left-front ribs with his left fist, and Plaintiff's left-back ribs and kidney area with his right fist, and doing so in a rapid-fire succession, for 30 to 40 blows before stopping to catch his breath.

24. At the very same time Lucia was rapidly punching the Plaintiff's ribs, Popour was kicking the Plaintiff under his right arm-pit and right-upper back area with his steal-tipped boots, also in a rapid-fire succession, 20 to 30 times before he stopped to catch his breath.

25. After just a few seconds of catching his breath, Lucia then continued on to punch the Plaintiff in the same manner as previously described and, a few seconds after that, Popour came up from behind Plaintiff, wrapped his hands around Plaintiff's throat and started choking him, squeezing so hard, Plaintiff could not take another breath.

- 7 -

26. Desperately needing to breathe, Plaintiff reached up with his left hand and grabbed a hold of Popour's fingers and bent them back until Popour released his choke hold but, just a few seconds later, Popour came back from behind Plaintiff and this time, he pulled a thick gaged plastic garbage bag over Plaintiff's head and pulled it down over Plaintiff's face and pulled it tight around his neck, totally cutting off the Plaintiff's air supply again, which he did.

27. All Plaintiff could do at that point was, reach up and try to poke his fingers through the plastic and into his mouth making a hole so he could breath again and, all this, while Lucia was still viciously beating his ribs.

28. All of the sudden, about 10 to 12 minutes into this vigilante gang-like assault, Grimshaw, who was standing about 5 feet away from said attack, standing in the gateway of the gallery control booth (bubble) observing what was happening, instructed his officers to stop, and so they did. Grimshaw instructed Plaintiff to get up and go back to his Cell.

29. Plaintiff was in extreme pain, his whole body trembling, had to make several attempts to get to his feet. Once on his feet, he staggered to his right several feet and fell into several empty boxes that were up against the wall at the foot of the stairs. After a few more attempts to stand up, Plaintiff stood up, and staggered back down the gallery, using the heating pipes to stay

on his feet. Once Plaintiff re-entered his Cell, he collapsed to the ground. His head came to rest up-against the bottom of the Cell bars and his legs and feet under the bunk, and which is were he laid motionless for about the next 3 hours.

**30.** As Plaintiff laid motionless on the ground, inmate on either side in their Cells kept trying to root Plaintiff on to try and get up and lay down in his bunk but, Plaintiff, still struggling to breathe and just in too much pain to even roll to his side so as to pull on the bunk frame to assist him in trying to even sit-up, simply could not do so.

**31.** After about 30 to 45 minutes after returning to his Cell, Rock stepped to the front of Plaintiff's Cell and said: "Frank, you need to get up and try to relax in your bed.". Plaintiff looked up at him and told him he was having great difficulty breathing and felt he had some major damage in his chest and could not move from the pain and, to please get him to the hospital quickly. Rock told Plaintiff that he did not see that happening and repeated that he needed to keep trying to get up and lay in his bed, then walked away.

**32.** About 30 to 45 minutes after Rock had walked away from Plaintiff's Cell, Popour showed-up. Popour looked down at the Plaintiff laying on the ground and told him: "Frank, try to get up and lay down in your bed.". Plaintiff looked up at Popour and repeated to him what he said to Rock, that he was still having

great difficulty breathing and he just could not move because of how the pain was just to overwhelming for him and to please get him to the hospital.

**33.** On July 31, 2010, at about 11:00pm., while coming onto his post at shift-change, Correctional Officer P. Stotler (hereinafter "Stotler"), walked up on Plaintiff and found him laying on the ground at his Cell bars and asked him are you all right? Plaintiff looked up at him and told him that he had been beaten-up by a few officers and was having great difficulty breathing [s]till and that he was in a lot of pain and just could not move and ask him to please get him to the hospital. Stotler said he would see what he could do, then continued on his rounds.

**34.** About 10 to 15 minutes after walking away from Plaintiff's Cell, Stotler came back with 2 inmate porters and they were carrying a stretcher. The Cell gate opened, the porters stepped into Plaintiff's Cell and picked him up and put him on the stretcher, then started to carry him towards the front of One Company.

**35.** When the inmate porters reached the front of the company, they passed through the front company gate, walked several feet reaching the bottom of the steps, then suddenly stopped. Grimshaw had halted the porters from going up the stairs, leaned over the top of plaintiff and told him: "listen to me, the [o]nly way I'm going to let you go up to the hospital is if you say this happened

to you because you fell out of your bed. You better not even think about telling anybody that my officers did this. You better not think about writing-up any complaints against me or my officers. If you do, before me or my officers have to go to court, before they lose their jobs and their pensions and, you hurt their families, I will make sure that my officers kill you, kill you dead, do you understand me?". Plaintiff told Grimshaw, that he will do whatever he wants, say anything he wants, just please get him to the hospital. Grimshaw then told the inmate porters to go ahead and take plaintiff up to the hospital.

36. On July 31, 2010, at about 11:30pm., Plaintiff arrived up in the hospital where, he was surprised to see that Grimshaw was already up there, and talking to the facility nurse in the corner of the examination room.

37. After asking the Plaintiff several questions, the facility nurse put an oxygen mask over Plaintiff's face which, did help him with his breathing and also, administered one of the most powerful painkillers he was allowed to administer. After a short examination and a few more questions, Plaintiff had to tell the facility nurse that he fell out of bed because Grimshaw was starring at him from across the room, the facility nurse found it necessary to call for an ambulance so to take the Plaintiff to the outside hospital, Champlain Valley Medical Center Emergency Room for a more intensive/professional medical assistance.

38. On August 1, 2010, at about 12:30am., the ambulance arrived to take Plaintiff to the outside emergency room at Champlain Valley Medical Center and arriving there at about 12:45am.

39. Plaintiff was taken into an examination room and questioned by the intake nurse but, could only answer certain questions. The two escort officers that accompanied him answered most of the question asked.

40. Because of the severe pain the Plaintiff was in, the ambulance attendants had to put Plaintiff on their transport device while still on the facility stretcher, so at the outside hospital emergency room, a nurse and a doctor lifted the Plaintiff up off of that and onto their hospital bed.

41. The E.R. nurse switched the ambulance oxygen mask with one of theirs as so to keep helping the Plaintiff to breath and, gave him an even more powerful painkiller.

42. Once the doctor came back into the examination room, she asked the Plaintiff to lift his shirt but had to assist him with that, observed Plaintiff's upper body, walked around to his back side, lifted that part of his shirt, came back around to the front and commented that, there is no way that all these bruises happened by falling out of no bed then, immediately ordered that x-rays be taken.

43. Plaintiff was taken to the x-ray room and the nurse there was able to crank the hospital bed up enough to take a few x-rays of Plaintiff's upper and mid body.

44. Subsequent to the doctor reviewing the x-rays, she told Plaintiff that it looked like he had a few broken ribs; a few fractured ribs; torn ligaments in the ribs; a punctured lung and; bruised kidneys. She instructed the nurse to administer another painkiller and the oxygen flow needed to be turned up a bit more, and they wanted to keep me there for several more hours for observation.

45. On August 1, 2010, at about 6:00am., Plaintiff was released from the emergency care and was transported back to Clinton where he was placed under a mandatory medical watch for the next week due to how server the injuries were.

46. On August 2, 2010, Doctor Adam examined Plaintiff before breakfast and after his check, reiterated what the outside hospital doctor said about there being a hole in Plaintiff's lung.

47. About a week later, Plaintiff was released back to D Block, One Company, Cell #12.

48. On or about September, 2010, Plaintiff was able to be seen by Doctor Kang Lee (hereinafter "Lee"), and made it a point to tell him that, even though Plaintiff did not write-up the several

officers for the above-mentioned vigilante gang-like assault against him, he needed Lee to know exactly what happened so to have him help him to correctly heel from all the apparent damage but, Lee got up out of his chair and told Plaintiff to get out of his office, that he did not want to hear anything about no officers beating him up and hurting him.

49. On June 10, 2011, Plaintiff filed a Nurses Sick-Call Request explaining that he was experiencing an extreme amount of pain, and clearly stated that due to "another" Cell movement and that, his lower back was hurting him; both his kidney's; ribs; chest and; that he was experiencing difficulty with his breathing, and explained why he thought this was all because of the vicious beat-down he received from several officers back on July 31, 2010 and, that Plaintiff had already discussed all of this with Lee at great length. Plaintiff reiterated same at the Nurses Sick-Call call-out but, no kind of examination was preformed at that time, but Plaintiff was placed on a list to see Lee for several weeks further in time where, when he was seen by Lee, Lee not only did not preform any kind of examination to him, Lee told the Plaintiff "again" that he did not want to hear anything about any officers beating him up and to get out of his office immediately.

50. On June 16, 2011, Plaintiff's Attorney had written to Doctor Vonda Johnson (hereinafter "Johnson"), after receiving several distressful letters from Plaintiff complaining about what Lee was doing/not doing from his client. Johnson refused/denied to

respond to said attorney.

**51.** On June 20, 2011, Plaintiff filed with the I.L.C. (Inmate Liaison Committee) Office, a four page detailed document about the vicious beat-down that Plaintiff received on the night of July 31, 2010 but, absolutely nothing was done about it.

**52.** On July 1, 2011, Plaintiff filed a second Nurses Sick-Call Request because after three weeks, he had still not been called-out to be seen by Lee despite the very serious nature of his complaints.

**53.** On September 8, 2011, after filing several Inmate Grievances against Lee, Plaintiff filed yet another, clearly stating that Lee, as well as Johnson, were both refusing, denying, ignoring and verbally dismissing his desperate attempts to get medical assistance for what had added up to an alarming amount of very serious injuries which, Plaintiff felt should have been immediate medical care. The I.G.R.C. (Inmate Grievance Resolution Committee) responded in a most unsatisfactory manner, so Plaintiff appealed yet another disappointing response to Thomas LaValley who, once again, denied Plaintiff's appeal so, Plaintiff filed yet another appeal to C.O.R.C. (Central Office Review Committee) who, once again, denied the appeal without addressing all the issues once again.

**54.** On April 4, 2012, Plaintiff sent Doctor Carl Koenigsmann

(hereinafter "Koenigsmann") yet another letter and once again, informing him that Plaintiff has sent multiple letters to his Regional Medical Director as well as the facility health services director of all his complaints about everything and in detail but, he did not respond.

55. On April 10, 2012 Plaintiff sent Koenigsmann another letter, partially as a desperate follow-up letter and partially informing him of even more (recent) disappointing events. On May 7, 2012, Koenigsmann had someone else respond back, and who made a few misinformed/mistaken comments which were wholly dismissive in nature.

56. On May 11, 2012, Plaintiff sent Koenigsmann another letter, this time alerting him to the mistakes and misinformation from the last response but, he had someone besides him once again answer my desperate plea for help/assistance with what he has/had made clear was inadequate medical care and treatment by his underlings but again, Plaintiff was dismissed.

57. On April 23, 2012, Plaintiff, once again filed another grievance against Lee; Johnson; Amatucci and; Koenigsmann, fully detailing the inadequate medical care he was receiving and this time, how Lee was not only mocking plaintiff, but telling him he was an outright liar about the pain he was in and, that the pain plaintiff "thinks" he feels in his chest, is only arthritis and everybody eventually gets that. Then Lee got up out of his chair

and told the Plaintiff that he did not want to hear anything else about any officers who beat him up and Plaintiff was to get out of his office. The I.G.R.C. denied the grievance without addressing all the issues. Plaintiff appealed to LaValley once again, he subsequently denied the appeal without addressing all the issues. Plaintiff appealed to C.O.R.C., they also denied the appeal without addressing all the issues.

58. On July 17, 2012, Plaintiff suffered a devastating major heart-attack which required an immediate triple bypass surgical operation to stay alive.

59. On October 24, 2012, Plaintiff was seen by Lee. Lee said to Plaintiff, what are you complaining about now?. Plaintiff went through a list of complaints. Lee responded by saying there was nothing wrong with Plaintiff, that he was faking the injuries and lying to him about them. Also on that day, Plaintiff filed yet another grievance against Lee which, I.G.R.C. denied the grievance without addressing all the issues. LaValley denied the appeal without addressing all the issues. C.O.R.C. denied the appeal without addressing all the issues.

60. Also on October 24, 2012, Plaintiff sent Johnson a detailed letter about what Lee had said and done to him earlier that day. Johnson refused/denied to respond.

61. On November 30, 2012, Plaintiff was again seen by Lee.

Plaintiff explained the pains he was suffering/experiencing but Lee instantly told Plaintiff that he was lying and once again told him, get out of his office, he had already told Plaintiff that there was nothing that he was going to do for him. So, Plaintiff [once again] filed a grievance against Lee. I.G.R.C. denied the grievance without addressing all the issues. LaValley denied the appeal without addressing all the issues. C.O.R.C. denied the appeal without addressing all the issues.

**62.** On December 14, 2012, Plaintiff sent a detailed letter to Johnson, not only complaining about Lee again but, clearly begging her for her help in this ongoing matter. Johnson refused/denied to respond.

**63.** Also on December 14, 2012, Plaintiff once again tried to address his medical concerns to nurses sick-call, just like Koenigsmann keeps insiting he do. No call-out was received.

**64.** On December 18, 2012, Plaintiff sent Koenigsmann yet [another] letter notifying yet [once again] that he was experiencing ongoing medical inadequacies. Koenigsmann [once again] had someone else respond back but, just did not address all the issues presented and, [once again], instructing Plaintiff to take his complaints to the facility medical staff.

**65.** On January 24, 2013, Plaintiff was seen again by Lee. Plaintiff clearly explained that he was feeling a sharp pain in

his chest that he thought was from a surgical wire that was used to close his sternum from the triple bypass open heart surgery. Lee responded that Plaintiff did not have any metal wires in his chest. (But very clearly does). So, Plaintiff filed yet [another] grievance against him; Johnson; Hentschel and; Koenigsmann, clearly stating what has been going on with eveything concerning each of the above-mentioned and their actions or, lack of. I.G.R.C. denied the grievance without addressing all the issues. LaValley denied the appeal without addressing all the issues. C.O.R.C. denied the appeal without addressing all the issues.

## VII. COUNT ONE: PERSONAL INVOLVEMENT OF A SUPERVISOR

66. Defendant Grimshaw exercised deliberate indifference to Plaintiff's health and safety by (A) directly participating in and directing the brutal/vicious vigilante gang-like assault on the Plaintiff; (B) created the policy or custom under which the violation occurred; (C) was grossly negligent in supervising subordinates who committed the violation and; (D) was deliberately indifferent to the rights of the Plaintiff by failing to stop the savage attack on the Plaintiff when he was screaming out in extreme pain.

## COUNT TWO: BREACH OF DUTY TO PROTECT

67. Defendant(s) Grimshaw; Wheldon and; Rock, exercised deliberate indifference to Plaintiff's health and safety by failing to protect him from and, intervening in, a situation where excessive force was being used by other officers when (a) they had

a realistic opportunity to intervene and prevent the harm; **(b)** as a reasonable person in their position, they would know that the Plaintiff's (clearly established) constitutional rights were being violated.

### COUNT THREE: CONSPIRACY

**68.** Defendant(s) Grimshaw; Popour; Wheldon; Rock; [Doe] and; Lucia exercised deliberate indifference to the Plaintiff's health and safety when they **(1)** as state actors, all entered into an agreement; **(2)** to act in concert to inflict an unconstitutional injury(s) upon the Plaintiff and; **(3)** committed such overt acts in furtherance of that goal causing damages to the Plaintiff.

### COUNT FOUR: USE OF EXCESSIVE FORCE

**69.** Defendant(s) Popour; [Doe] and; Lucia exercised deliberate indifference to the Plaintiff's health and safety when the force they used against the Plaintiff was [not] applied in a good-faith effort to maintain nor restore discipline but, was maliciously and sadistically used to cause the Plaintiff harm which was repugnant to the conscience of mankind and amounting to a constitutional violation and, which is/was referenced by the fact(s) that **FIRST,** the Plaintiff was laying in his Cell watching television when Grimshaw and Popour walked up on him and **SECOND,** the entire facility was on a lock-down meaning, not one single inmate should have been out of his Cell at that time.

**70.** Defendant Grimshaw further exercised deliberate

indifference to the Plaintiff's health and safety when he threatened to kill and/or have the Plaintiff killed if he should tell anybody, write-up, file charges against him or any of his officers. Any reasonable prison guard would have believed that that was if fact a violation of Plaintiff's constitutional rights. Subjecting Plaintiff to this constant fear of such violence must shock the modern sensibilities and serves absolutely no legitimate penological purpose and constituted brutal and wanton acts of cruelty and pose a substantial risk of serious harm to Plaintiff's future health.

## COUNT FIVE: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

71. Defendant(s) Grimshaw; Popour and; Rock exercised deliberate indifference to the Plaintiff's health and safety and to his serious medical needs when they knew that the Plaintiff faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm that subsequently was inflicted upon him; manifested deliberate indifference when they intentionally denied and/or delayed access to medical care.

72. Defendant Lee exercised deliberate indifference to Plaintiff's health and safety and his serious medical needs by denying/refusing to provide medical assistance to the Plaintiff [because] of how he received such injuries and consistently demanding that Plaintiff get-up and leave his office each and every time Plaintiff tried to seek medical assistance/care that was ongoing for more then three years and as recent as this

writing. Plaintiff was/is still experiencing ongoing extreme pain
in both, his left-side as well as right-side lower ribs; was/is
experiencing ongoing extreme dificulty with his breathing; was/is
experiencing ongoing extreme pain in his chest; ongoing pain in
his right upper arm and; ongoing massive pain in his lower right-
side spinal area that, travels down to his right foot. Defendant
Lee fail[ed] to act while actually aware of the substantial risk
that serious harm would result and, which did, when Plaintiff
continuously informed him that he was having chest pains and
trouble breathing, but Defendant Lee dismissed the Plaintiff and
accused him of lying to him about the pain and that Plaintiff was
faking the pain and also dismissed the Plaintiff from his office
and which, these ongoing sufficiently serious claims, going
unattended, turned out to be that the Plaintiff experienced a
major heart-attack which, required an immediate triple-bypass open
heart surgery to save his life and also which, his depravation of
medical care is still presenting a condition of urgency that may
very well produce death, degeneration and is in fact still causing
ongoing extreme pain in several of the previously mentioned areas
and may/can result in further significant injury(s) and/or the
unnecessary and wanton infliction of even more extreme pain.

73. Defendant Lee denied/refused to perceive Plaintiff's
medical needs in question as important and worthy of comment or
treatment, failed to consider how the medical condition(s)
significantly were effecting Plaintiff's daily activities nor, how
Plaintiff was/is suffering from the existence of the ongoing

chronic and substantial pain(s).

74. Defendant(s) Johnson and Koenigsmann both exercised deliberate indifference to Plaintiff's health and safety and his serious medical needs when, they both failed to act after receiving "several" frantic letters from Plaintiff complaining of Defendant Lee's comments that Plaintiff was lying about the pains he was experiencing and that Defendant Lee was denying/refusing to provide very much needed medical care to the Plaintiff [because] of how he received said injuries (officers beat him up) and, that Defendant Lee was denying/refusing to even examine the Plaintiff for such claims but, was in fact forcing him out of his office when the conversation reached how he received said injuries. Only [a]fter Plaintiff suffered from the massive heart-attack did Defendant Johnson attempt to make (personal) contact with him.

## COUNT SIX: PERSONAL INVOLVEMENT OF THE SUPERINTENDENT

75. Defendant LaValley exercised deliberate indifference to Plaintiff's health and safety and his serious medical needs when he (1) failed to remedy the violation(s) against Plaintiff after being informed of them by report(s) and/or appeal(s); (2) was grossly negligent in supervising subordinates who committed the violation and; (3) was deliberately indifferent to the rights of the Plaintiff by failing to act on the information that constitutional rights of the Plaintiff were being violated again, when he denied the "several" grievance appeals mostly complaining about the same issues each time making him liable for the conduct

of these ongoing claimed violations, constituting his personal involvement in the underlying unconstitutional act(s).

## VIII. **PRAYER FOR RELIEF**

**W H E R E F O R E,** Plaintiff, Frank Thon prays for and requests that an ORDER be issued declaring that the defendants have acted in violation of the United States Constitution and for a judgment in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for the pain and mental anguish suffered by them due to the deliberate indifference and intentional misconduct of defendants individually and/or as they performed in cocert with their cohort(s).

**FURTHER,** Plaintiff, Frank Thon prays for and requests that this Court issue an injunction compelling defendants and any and all associates from any kind of retaliation for Plaintiff filing this action.

**FURTHERMORE,** Plaintiff, Frank Thon prays for and requests $300,000.00 as compensatory damages be awarded to Plaintiff from **[each]** individual defendant together with his attorneys' fees and costs, and for such additional relief as this Court may deem just, proper and equitable.

**FURTHERMORE,** Plaintiff, Frank Thon prays for and requests $900.000.00 as punitive damages be awarded to Plaintiff from **[each]** individual defendant.

**DATED: July 26, 2013**
     **Dannemora, New York**


Pursuant To 28 U.S.C. §1746, I, Frank Thon, Plaintiff, PRO SE, Declares Under The Penalty Of Perjury That The Foregoing Is True And Correct To The Best Of My First Hand Knowledge And Belief.


Respectfully Submitted,

Frank Thon, 03-A-6611
Plaintiff, PRO SE
Clinton Correctional Facility
Route 374
P.O. Box 2001
Dannemora, New York 12929